Good morning, Your Honors, and may it please the Court, Nina Wilder on behalf of Appellant Clemente Zavaleta. This is a sentencing appeal that has three prongs, and there was an apprendee challenge based on the fact that Mr. Zavaleta was sentenced under the statutory mandatory minimum, the 10-year statutory mandatory minimum, notwithstanding that he pled to only, at most, one kilogram of drugs. Second, the second prong is Booker error. This sentencing occurred prior to Booker and the remedy of Booker, that is, that the guidelines are advisory and the record is replete with statements by the Court regarding the mandatory nature of the guidelines. The third prong is based on the coercive tactics used by the police to gain entry to Mr. Zavaleta's home. Under Verdugo, in particular, that evidence should not have been used, namely six kilograms of an additional six kilograms of drugs and a weapon found in the home should not have been used to enhance Mr. Zavaleta's sentence, either under the guidelines and certainly because of the under 841A1A. There is substantial agreement, actually, in this case. Well, the government just says you're entitled to an amylene remand to ask the district court whether the district court would impose the same sentence knowing that the guidelines are advisory. So what's wrong with that? What's wrong with that is that, for one, we have Apprendi error as well. This is not a pure amylene case. The invocation of the statutory mandatory minimum based on uncharged, unproven conduct under Velasco Heredia requires a full remand. Additionally, and this goes to all three prongs, the entire calculus of sentencing in this case was distorted by the misuse of the six kilograms. That is, at each stage, the court improperly used the six kilograms, and we now have an illegal sentence. The purpose of sending back the case to ask the court the amylene question, which is, if you had known the guidelines were not mandatory, that they were advisory, would you have sentenced differently, materially differently? The answer has to be yes, because this is an illegal sentence because of the Apprendi error. It is an illegally structured sentence, and therefore, the court has to say yes to the amylene inquiry. And if the court has to say yes, then as a In addition, and I'm moving to the third prong, again, because at each stage, the court believed erroneously that it was operating under a mandatory system, mandatory statutory provision, mandatory guideline provision, that also factored into the court's assessment of the suppression argument, because the court weighed that argument against the mandatory nature of both the statutory provision and the guideline provision. And for that reason, as well, the matter should go back on a full remand so the court can reconsider the or essentially the equities of the illegal seizure. So you would just have us send it back? I would have you send it back. Without addressing this suppression issue? I would have it sent back. Just straight sent back? Because I think on this record, I mean, unless the court is inclined to – Well, there's no need to decide. Why would we want to decide anything that we don't have to decide, right? Yeah. No. What we're asking for is a full remand so that the court can reevaluate the use of the six kilograms and the gun under the proper standards. And again, that factors into the suppression evaluation. Because in this case, there was absolutely no penalty for the illegality, for the coercive entry. There's a – in the sealed transcript, there's a discussion between the court and Mr. Zavalletta in which the court endeavors to explain why the suppression aided Mr. Zavalletta. But in fact, it aided him not at all. And that's the point that Judge Schroeder made in Kim in the guideline case, that you have to be especially careful under the guidelines to make sure that suppression and exclusion remedies have some effect. Here, it had no effect whatsoever. Didn't the – wasn't there something in the district court judge's findings that – or statements when he was making this issue or addressing this issue that although the obtaining the consent was coercive, that the officers nonetheless had reason to go to the house to check for additional drugs there, that they didn't go there for the sole purpose of trying to obtain drugs that would allow them to obtain an enhanced sentence? Well, I have to – Didn't he make some comments like that? The judge, she, did make some comments like that. She. But the fact – there are two caveats to that. And one is that if the police wanted to go to the house to search for drugs, that's why we have a warrant requirement. And that's why we have telephonic warrants, the ability to get a telephonic warrant. So the notion that they could go to the house to get drugs without a warrant and then engage in coercive conduct misses the Fourth Amendment issue entirely. They could have gotten a warrant if they had legitimate purposes for going. Second, and this, again, there is no penalty. When they went to the house and engaged in coercive conduct, and under the guidelines as constituted and under the court's interpretation of the guidelines, there was absolutely no penalty and no disincentive for them to do so, for them to get the warrant as they're required to do. But again, and this comes down to the court considered – and the court did say this was a close case. When the court considered, again, the equities, the conduct on the one side and the mandatory structure of the statute and the guidelines on the other, the court concluded that the conduct, the egregiousness of the conduct did not outweigh the mandatory requirements of the statutory and guideline law. And so that – So let me ask you, just so I make sure I understand. Are you saying that because the guidelines are now advisory, that in this particular – the context in which the court suppressed this additional 5 kilograms, that in this advisory scheme, the court need not actually consider this additional – the additional 5 kilograms as part of relevant conduct? Well, two comments. Everything gets two comments. The first is that the court did not just consider it from a guideline perspective. The court also was looking at the statutory and mandatory minimum, and if that – as to that, there is still no discretion, and it cannot be used for that. Okay. But as to the guidelines, we were running into Zavala-Kharti and the issue that's before this Court en banc now, which is the relationship currently between the guidelines and the 3553 factors. And under 3553, the court could decide not to consider the additional quantity. It would still be factored into the guideline computation, but the court might decide under 3553, based on the suppression argument or other considerations, that the court would not take that into account. I see. I would think one implication of your argument about needing a penalty for the suppression would be that the court can't consider the extra 5 or 6 kilograms. If the court were to – well, the argument I'm making, obviously, is based on the court's discretion to consider it or not. The case law states that for purposes of guideline computation, it may be considered as relevant conduct. However, the court … So you're content to go back and argue to the district court that it ought not to in order to keep the force of the suppression order? I'm content to go back to the district court on a full remand. There's also the issue of the gun, which was not argued. There is a substantial argument that the two-point enhancement should not have been given because the gun was not related to the drugs. There are a number of arguments that were not made, but, yes, the short answer is yes. The remedy I'm requesting is a full remand for reconsideration. Time's up. Thank you. May it please the court, I'm Barbara Valliere on behalf of the United States. There's some feedback on this. I don't know what's going on here. Can the court hear me? Yes, we can hear you. I turned the volume down on this, so hopefully that feedback will stop. Again, Barbara Valliere on behalf of the United States. I'd like to address first what we do agree on. We do agree that the defendant in this case is entitled to an omeling remand, a limited remand, because the district court at the time that she sentenced was sentencing under a mandatory guideline scheme. And therefore, although there was no objection to that by the defense, this court has recognized an omeling that the court must, that a remand is required so that the district court can decide whether or not it would have imposed the same sentence under the advisory guidelines. In fact, you also agree that there was an apprendee violation. Well, actually, Your Honor, we agree that there was an apprendee error in this case, and we agree that the apprendee error was plain in this case because at the time of the sentence, the court took upon, calculated the guideline sentence based on the 6 kilos as well as the weapon that were found in the house, which were not, the defendant did not admit to at the time of the plea. However, we did not concede in the brief, nor do we concede here, that the apprendee error requires a full resentencing because of the standard of review. The standard of the review in this case of the apprendee error is plain error. The Velazquez-Heredia case was a harmless error case. And then in that case, the court determined that remand for full resentencing was required given the apprendee error. Isn't the problem here is that the additional 5 kilograms, with the additional 5, it got him a mandatory minimum sentence? That's one. That is one issue. He linked his sentence to the mandatory minimum. That's one of the problems, Your Honor. In other words, that became sort of the mark. Yes, Your Honor. At this point. That's one of the issues that's being raised. However, that's not really the apprendee issue. The apprendee issue is whether or not it exposed him to a higher sentence. That's correct, Your Honor. But in United States v. Cotton, Your Honor, which is what the government relied on in its brief, applying the plain error standard, the court need not recognize the error in the fairness and integrity of the proceedings are not affected if the evidence of the 6 kilograms and the weapon are uncontroverted. In this case, they're uncontroverted. And I say that for two reasons. First, at the plea hearing, the only objection made to the pre-sentence report or to the calculation of the guidelines was made on the basis that the evidence that was seized from the house should not be considered under the exclusionary rule. There was no issue as to the calculation of the guidelines based on whether or not the defendant, in fact, had possession of those, of that particular, of the kilos from the house itself or the weapon. And that was supported in the record before the district court by the fact that the pre-sentence report included in it, and I would call the court's attention to page 5 of the pre-sentence report, the defendant had actually admitted post-arrest that he possessed the 6 kilograms and the weapon in the house. And therefore, the district court had before it uncontroverted facts, uncontroverted facts, I'm going to try turning this down one more time, that, in fact, the defendant had possessed all 7 kilograms and the weapon at the time that she imposed the sentence. So therefore, under the United States v. Codden and under this court's decision in Valencia, the record, as established, is sufficient for the court to determine that there's no need for full resentencing. The error that the court complains about, which is that the mandatory minimum may have been imposed, 120 months, can again be reconsidered by the district court under the Apprendi error, that's the Booker error, or the fact that the court considered the guidelines to be mandatory at the time that the court imposed the sentence. So a limited remand. I'm glad you brought that up, Your Honor, because I was a little confused by my opponent's argument here this morning. I got the impression she was saying that she was only asking for a full resentencing. She did. That's what she asked for. Right. But she was not saying it in the context that she wanted this court to order that the sentence... No, she didn't, but it still was a question. I agree. And I think that I disagree with my opponent in a couple of ways. The first is that somehow the district court, when it first looked at this issue at sentencing, was considering the mandatory nature of the guidelines at the time that it decided to take the 6 kilos into account. There's no indication in the record that the court's ruling on the fact that it was going to consider those 6 kilos was at all affected by the mandatory nature of the guidelines. Instead, the court was presented by the government and by the defense, which did object to those kilos under the exclusionary rule, but with the fact that the case law of this jurisdiction under Verdugo had been limited by this court's decision in Kim, that the exclusionary rule, to the extent it applies at all at sentencing, applies in the very limited context of that there's evidence in the record that the conduct were motivated by the desire to jack up the defendant's sentence. Here, the district court not only concluded that they were not, she made specific findings on the fact. Her findings at the time of sentencing were that subjectively and objectively, the police were not motivated at the time that they got the consent from Ms. Felix to search the house for purposes of jacking up the defendant's charges or his sentence. And in fact, the record, if you look at it which, on a clearer standard of review, which is what this court is looking at, is entitled to deference. But if you look at the full record in this case and you look at the testimony at the suppression hearing, you'll find that the only evidence, direct evidence, of motivation in this case by the police officers is the testimony of Officer Ayala. Officer Ayala testified that when he went to the door, he told Ms. Felix that he wanted to search because he told her there was something that was bad in there for her and her children. Whatever else you conclude about the conflict between the testimony of Ms. Ayala and Ms. Felix at that time, which the judge ultimately concluded that the consent was coerced, Ms. Felix agreed in her testimony that the police officer told her that the reason he wanted to search the house was because there was something bad in there. This is all in the supplemental excerpts of record that the government has filed. The testimony of Ms. Felix and of Officer Ayala match each other and essentially support that the justification for the police searching, or at least the only justification that's present on this record, was the fact that there was, quote, something bad in the house or that there were drugs that would harm the children. The district court, at the time that it ruled at sentencing on whether or not it should exclude the six kilos in its calculation of the guidelines and frankly, I think if you read the sentencing transcript, one thing you recognize is that she somewhat backed away from her conclusion about any kind of unlawful police conduct, although she concluded that she had agreed that the statement had been made that the officers got the consent from Ms. Felix because Ms. Felix had concluded that the officer was threatening that if they did not do so, if she did not consent, then they would take her children and she would be arrested. The district court — Did she call that egregious conduct, though? Your Honor, actually she did not call it egregious conduct. She quite specifically said at the sentencing that she did not find it to be the type of egregious conduct that this court had recognized in both — in Verdugo that would require suppression of the evidence at the time of sentencing. Quite frankly, to suppress on this record that evidence, the court would have to be There's no justification in this particular case for such a vast expansion. The defendant admitted the six kilos. The defendant admitted the gun. And the consent, although the court concluded was coerced, was all of the officers that were actually searching the house were operating under the assumption that they had a valid consent to search. This is far, far from the facts of Verdugo. This does not fit the exception of Kim that this court has recognized. And in the government's view, the district court's ruling that there was no objective or subjective motivation — I mean, excuse me — motivation to search the house for an improper purpose or to jack up the defendant's sentence is — should be affirmed by this court. The judge can't be able to say. Well, you mentioned that he admitted the additional kilos that were in the house. And where does he do that? Do you mean just by not contesting the pre-sentence report, or — They did not contest the pre-sentence report, Your Honor. In fact, it's in the sentencing transcript that they stipulated to the facts and sentencing in the pre-sentence report. And I could explain to you that if you look at page five of the pre-sentence report, which the government had submitted under seal, there it discusses the written statement that the defendant given post-arrest that — in which he the six kilos that were found in the attic of his house and the nine-millimeter that was found on the top of it. That's in the pre-sentence report, but not necessarily in the colloquy in court. No, it was not in the colloquy, Your Honor, which would — I — which is I'm — which is the basis of the Apprendi Error. That's — But it is not. That was my question. Yeah. It's the plain error standard that we're saying applies. And therefore — in fact, Your Honor, in Valencia, this court found that this pre-sentence report or the facts in the pre-sentence report were sufficient to claim of Apprendi Error on a plain error standard. So this is pretty much the same — or fairly close to the facts in Valencia. So as I understand it, the sentencing guideline range here with the one — with the full six was 105 to 135 — 108 to 135. Yes, Your Honor, 108. And the mandatory minimum was 120. That's correct, Your Honor. So your point is that, well, you know, there's just no — I think, Your Honor, our point — Well, I guess what you're saying is there — is that — is that there's no indication here that the district court would not sentence lower than 120 months. That's correct, Your Honor. Is that right? Although, and honestly — But isn't — but isn't the trouble — isn't the problem with that, though, is that when you have that idea of a mandatory minimum fixed as the point, is the district court really exercising any discretion? Well, I think, Your Honor, that that question will be answered most likely positively. Yeah, but it's different now, though. It's — I don't think it is, Your Honor, because — Because, you know, she could have said her — I don't know what the goal was. I mean, she may have been interested in just imposing a sentence at the low end of the guideline range, which would be 108. She — there's nothing in the record to indicate one way or the other other than the fact that she was operating on the assumption that it was a mandatory minimum. And I think, for that reason, that if the court issues a limited remand under Omelin, the court — and asks the question whether or not she would impose the same sentence had she understood that the guidelines were advisory, and that she would probably recognize that she would go lower, recognizing that she's not limited by the mandatory minimum. Okay. If there are no further questions from the court, we ask that you issue a limited remand under Omelin. Okay. I'm out of time. No, you're out of time. Why? Is there something you have to — you feel compelled to say? You've got about 30 seconds. I'm compelled to say several things. Okay. Make it short. The — one — the initial thing I feel compelled to say on the suppression issue is that Judge Armstrong found Officer Ayala not to be credible. So to then predicate the upholding the court's ruling on the basis of just — of what Officer Ayala had said, it makes no sense, because she found him to be inherently not credible and found Ms. Felix to be credible, and did find the conduct troublesome, because, as the court knows under Tingle, preying on a mother-child relationship is particularly reprehensible. Additionally — just two more points — the government cites Valencia and argues that this case is indistinguishable. In fact, this case is profoundly distinguishable from Valencia in that at the — at the plea colloquy, Mr. Valencia was told that he faced a 10-year mandatory minimum and a life sentence. In this case, the defendant was told that he faced no mandatory minimum and that he faced a 20-year maximum sentence. But he was sentenced under — Right. Under the life sentence provision. Okay. Okay. So those reasons — Got it? Thank you. Thank you, Your Honor. We appreciate your arguments. The matter will be submitted.
judges: Canby, Noonan, Paez